IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANK DEMARCO,<br><br>PLAINTIFF/COUNTERCLAIM DEFENDANT,<br><br>v.<br><br>NIGHTINGALE HEALTHENET CORPORATION,<br><br>DEFENDANT/COUNTERCLAIM PLAINTIFF. | Case No. 1:09-cv-3116 (BEL) |

## DEFENDANT/COUNTERCLAIM PLAINTIFF
## NIGHTINGALE HEALTHENET CORPORATION'S AMENDED COUNTERCLAIMS

Defendant/Counterclaim Plaintiff Nightingale Healthenet Corporation ("Nightingale"), by and through its counsel, hereby submits **its Amended** Counterclaims in the above-captioned matter.[1]

## FACTS

1.     Nightingale is a health care IT service and software and electronic medical records company in North America.  Nightingale offers its customers and clients, *inter alia*, integrated practice management, medical transcription, revenue cycle management, and other related services.

2.     On or around February 1, 2007, Nightingale hired DeMarco for the position of Regional Sales Manager, Physician Strategies, Mid-Atlantic Region.

---

[1] Pursuant to Local Rule 103.6(b), only newly added exhibits are attached to the Amended Counterclaim.

3.      On February 1, 2007, DeMarco signed his Employment Agreement.  (A copy of the Employment Agreement signed by DeMarco is attached as Exhibit A to Nightingale's Counterclaim).  The Employment Agreement provides in pertinent part:

6.1     During the Term, the Employee shall devote his/her full time and attention to the business and affairs of the Corporation, and shall not without the consent in writing of the Corporation, undertake any other business or occupation or become a director, officer, employee or agent of any other company, firm or individual.

9.1     The Employee agrees with and for the benefit of the Corporation that during his/her employment and for a period of 12 months thereafter he/she will not for any reason, directly or through a Related Person, either as an individual or as a partner or joint venture or as an employee, principal, consultant, agent, shareholder, officer, director, salesperson for any person, firm, association, organization, syndicate, company or corporation, or in any manner carry on, be engaged in, concerned with, interested in, advise, lend money to, guarantee the debts or obligations of, permit his/her name or any part of it to be used or employed by an person, business, firm, association, syndicate, company, organization or corporation concerned with or engaged or interested in a business which is the same as, or directly competitive with, the business of the Corporation including, without limitation, any business with respect to products competitive with those of the Corporation; nor will the Employee solicit or accept business with respect to products competitive with those of the Corporation from any of the Corporations customers, wherever situate; provided that the Employee shall be entitled, for investment purposes, to purchase and trade shares of a public company which are listed and posted for trading on a recognized stock exchange and the business of which public company may be in competition with the business of the Corporation provided that the Employee shall not directly or indirectly, own more than 2 percent of the issued capital of the public company, or participate in its management or operation or in any advisory capacity.

9.2     In the event that the restrictions against engaging in competitive activity contained in this Article 9 shall be determined by any court of competent jurisdiction to be unenforceable by reason of their extending for too great a period of time or over too great a geographical area or by reason of their being too extensive in any other respect, this Article 9 shall be interpreted to extend only over the maximum period of time for which it may be enforceable and over the maximum geographical areas as to which it may

2

be enforceable and to the maximum extent in all other respects as to which it
may be enforceable, all as determined by such court in such action.

**10.4** The Employee understands and agrees that the Corporation has a
material interest in preserving the relationship it has developed with its
customers against impairment by competitive activities of a former
employee, representative or agent.   Accordingly, the Employee agrees that
the restrictions and covenants contained in Articles 8, 9, 10 of this Agreement
and Employee's agreement to it by his/her execution of this Agreement, are
of the essence to this Agreement and constitute a material inducement to the
Corporation to enter into this Agreement and to employ the Employee and
that the Corporation would not enter into this Agreement absent such an
inducement.   Furthermore, any claim or cause of action by the Employee
against the Corporation, whether predicated on this Agreement or otherwise,
shall not constitute a defense to the enforcement by the Corporation of the
covenants or restrictions provided, however, that if any provision shall be
held to be illegal, invalid or unenforceable in any jurisdiction, the decision
shall not affect any other covenant or provision and it is the intention of the
parties that such provision may be modified or amended to render it legal,
valid or enforceable to the maximum extent permitted by applicable law.

4.     During the course of his employment, DeMarco signed several addenda to his

Employment Agreement by which Nightingale advanced DeMarco a total of $19,150.00.

Nightingale made these advances at DeMarco's request.

5.     From July 2007 through September 2007, Nightingale advanced DeMarco

$4,500.00, in three payments of $1,500.00.  (A copy of the First Addendum to the Employment

Agreement is attached as Exhibit B to Nightingale's Counterclaim).

6.     Upon information and belief, DeMarco began working for Allscripts, a direct

competitor of Nightingale, in July 2007, as its Regional Sales Director.  (A copy of

DeMarco's public LinkedIn page is attached as Exhibit 1 hereto.)  Among other things,

DeMarco claims that he "specializes" in revenue cycle management service, one of the

services he was supposed to be selling solely on behalf of Nightingale during his

employment.

3

     **7.**     **Allscripts, like Nightingale, sells revenue cycle management services, and other services similar to those sold by Nightingale. (A copy of Allscripts Webpage is attached as Exhibit 2 hereto.)**

     **8.**     **Upon information and belief, DeMarco devoted a substantial amount of time working for his own company, a dock and/or pier building/repair business, during his employment with Nightingale.**

     ~~6~~9.     In April 2008, Nightingale advanced DeMarco $10,000.00. (A copy of the Second Addendum to the Employment Agreement is attached as Exhibit C **to Nightingale's Counterclaim**).

     ~~7~~10.     In June and July 2008, Nightingale advanced DeMarco $4,650.00, in three payments of $1,550.00. (A copy of the Third Addendum to the Employment Agreement is attached as Exhibit D **to Nightingale's Counterclaim**).

     ~~8~~11.     DeMarco agreed that all of the above advances would be draws against future commissions and that Nightingale would apply earned commissions against the draws until such time that the draws were repaid in full to Nightingale. (Exhibits B, C, & D **to Nightingale's Counterclaim**).

     ~~9~~12.     During his employment with Nightingale, DeMarco earned $3,749.90 in commissions.

     ~~10~~13.     Per the addenda to the Employment Agreement, Nightingale applied the $3,749.90 amount of commissions against the $19,150.00 amount of outstanding advances.

     ~~11~~14.     DeMarco agreed that, in the event his employment with Nightingale ended prior to repayment in full of the advances, the balance of the outstanding advances will become due

and payable in the form of deduction from his final paycheck or accrued vacation or in such

other method as agreed by the parties.  (Exhibits B, C, & D **to Nightingale's Counterclaim**).

~~12~~15.   In July 2008, DeMarco voluntarily resigned his employment with Nightingale.

~~13~~16.   To date, DeMarco has not repaid the balance of the outstanding advances, which

is $15,400.10.

**17.    Upon information and belief, DeMarco is still working for Allscripts.**

**COUNT I**
**BREACH OF CONTRACT**
**(ADVANCE AGREEMENTS)**

18~~4~~.   Nightingale repeats and realleges the allegations of paragraph 1 through

paragraph 1~~3~~7 as if fully set forth herein.

15~~9~~.   As described in detail above, DeMarco and Nightingale had contracts regarding

advances made to DeMarco.

~~16~~20.   By failing to repay the balance of the outstanding advances described above,

DeMarco has breached his contracts with Nightingale.

~~17~~21.   As a direct and proximate result of DeMarco's breach of his contracts with

Nightingale, Nightingale has been damaged in the amount of $15,400.10 plus interest.

**COUNT II**
**UNJUST ENRICHMENT**

~~18~~22.   Nightingale repeats and realleges the allegations of paragraph 1 through

paragraph ~~17~~21 as if fully set forth herein.

~~19~~23.   Nightingale conferred the benefit of the above-described advances upon

DeMarco, per his request.

~~20~~24.   DeMarco had knowledge of and accepted the benefit of the above-described

5

advances.

~~21~~25. DeMarco failed to repay the balance of the above-described advances.

~~22~~26. Under these circumstances, DeMarco has been unjustly enriched by the receipt of the above-described advances and it would be inequitable for DeMarco not to repay the balance of the advances owed to Nightingale.

~~23~~27. As a direct and proximate result of DeMarco's actions described in detail above, Nightingale has been damaged in the amount of $15,400.10 plus interest.

**COUNT III**
**PROMISSORY ESTOPPEL**

~~24~~28. Nightingale repeats and realleges the allegations of paragraph 1 through paragraph 27~~3~~ as if fully set forth herein.

~~25~~29. DeMarco clearly and definitely promised to repay Nightingale for the above-described advances.

~~26~~30. DeMarco's promise to repay the above-described advances in full induced Nightingale to make the advances.

~~27~~31. Nightingale has been damaged by DeMarco's failure to repay the advances and the detriment caused by DeMarco can only be remedied by enforcement of his promise to repay them.

~~28~~32. As a direct and proximate result of DeMarco's actions described in detail above, Nightingale has been damaged in the amount of $15,400.10 plus interest.

**COUNT IV**
**BREACH OF CONTRACT**
**(EMPLOYMENT AGREEMENT)**

**33.** **Nightingale repeats and realleges the allegations of paragraph 1 through**

6

paragraph 32 as if fully set forth herein.

34.     The Employment Agreement is valid and enforceable, and all conditions precedent to its enforcement have been fulfilled.

35.     Upon information and belief, DeMarco has breached Paragraph 6.1 of his Employment Agreement with Nightingale by undertaking another business or occupation – his dock and/or pier building/repair business – without the written consent of Nightingale during his -employment with Nightingale.

36.     DeMarco failed to devote his full time and attention to the business and affairs of Nightingale in violation of Paragraph 6.1, causing Nightingale to lose available profitable sales opportunities.

37     DeMarco has breached Paragraph 9.1 of his Employment Agreement with Nightingale by becoming employed with Allscripts during his employment with Nightingale and by working for Allscripts for the entire 12 month period following his voluntary resignation with Nightingale.

38     Upon information and belief, DeMarco wrongfully diverted sales opportunities from Nightingale to Allscripts during his employment with Nightingale and wrongfully obtained sales opportunities for Allscripts after his employment with Nightingale.

39.     DeMarco's conduct was intentional, unprivileged and malicious, and it has caused monetary damages to Nightingale.

40.     As a direct and proximate result of DeMarco's actions described in detail above, Nightingale has been damaged in an amount to be determined at trial, and DeMarco

has been unjustly enriched in an amount to be determined at trial.

COUNT V
BREACH OF FIDUCIARY DUTY OF LOYALTY

41.     Nightingale repeats and realleges the allegations of paragraph 1 through paragraph 40 as if fully set forth herein.

42.     At all times during his employment with Nightingale, DeMarco was an agent of Nightingale, and owed a fiduciary duty of loyalty under the principles of Delaware agency law.

43.     DeMarco breached his fiduciary duty of loyalty to Nightingale by working simultaneously for Allscripts, engaging in a conflict of interest, and diverting sales from Nightingale to Allscripts.

44.     As a direct and proximate result of DeMarco's breach of his fiduciary duty of loyalty, Nightingale has suffered damages in an amount to be determined at trial, and DeMarco has been unjustly enriched in an amount to be determined at trial.

PRAYER FOR RELIEF

WHEREFORE, Nightingale Healthenet Corporation prays for the following relief:

A.     That the Court award it compensatory damages in an amount to be determined at trial;

B.     That the Court award it punitive damages in an amount to be determined at trial;

C.     That the Court disgorge DeMarco's salary during the period of time he failed to devote his full time and attention to the business and affairs of Nightingale;

D.     That the Court disgorge DeMarco's salary during the period of disloyalty;

EC.     That the Court award it pre-judgment interest and post-judgment interest interest;

FD.     That the Court award it attorney's fees and costs; and

<u>G</u>~~E~~.   That the Court award it such other and further relief as the Court deems just and proper; and

<u>H</u>~~FG~~.   Defendant/Counterclaim Plaintiff demands trial by jury.

Dated: **July 1, 2010,** ~~February 22,~~ 2010

Respectfully submitted,

/s/ Steven E. Kaplan
Katherine A. Goetzl (Federal Bar No. 16647)
Steven E. Kaplan (Federal Bar No. 16541)
LITTLER MENDELSON, P.C.
1150 17th Street, N.W., Suite 900
Washington, DC  20036
(202) 842-3400  Telephone
(202) 842-0011  Facsimile
kgoetzl@littler.com
skaplan@littler.com

Attorneys for Nightingale Healthenet
Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February, 2010, a copy of the foregoing Defendant/Counterclaim Plaintiff Nightingale Healthenet Corporation's Counterclaims was served electronically using the CM/ECF system upon:

Philip B. Zipin, Esq.
Gregg C. Greenberg, Esq.
The Zipin Law Firm, LLC
8403 Colesville Road, Suite 610
Silver Spring, Maryland 20910

Counsel for Plaintiff and Counterclaim Defendant

/s/ Steven E. Kaplan
Steven E. Kaplan

Firmwide:94115120.1 062956.1002
Firmwide:95980035.1 062956.1002